40430. HARDEMAN v. THE STATE.

HILL, Chief Justice.

The defendant was found guilty of the rape and felony murder of Lisa Hart and was sentenced to life imprisonment for the felony murder.[1]

The evidence authorized the jury to find that the victim and several friends went to a nightclub on the evening of August 29, 1982. The defendant was also at the club and was wearing dark pants and a dark shirt with a white towel draped around his neck. Around 12:45 a.m. the victim left the club with a girl friend who had promised her a ride home. As the women were leaving, the defendant, a neighbor of the victim, asked for a ride. The driver agreed and the defendant got into the back seat of the car. After they bought gas, they stopped in front of a neighbor's house. At this time, the defendant got out of the car. After about twenty minutes the driver's boyfriend arrived. The victim then got out of the car and walked up the road toward her house.

Around 2:00 a.m., several neighbors heard screams, but ignored

---

[1] The defendant was found guilty on October 22, 1982. Motion for new trial was timely filed and the transcript was prepared and filed on March 15, 1983. The unamended motion for new trial was heard and overruled on June 14. Notice of appeal was timely filed and the record was docketed here on October 18. The case was submitted for decision by this court on December 2, 1983.

them. They heard more noise about thirty minutes later and went outside to see what had happened. The defendant was seen running from the direction of his house yelling that the victim was dead. The victim was found in a ditch by the road wearing only a blouse which was unbuttoned and pulled up to her arms. The body was cold to the touch, so the victim's father and the defendant ran to call the police and to get a sheet to cover the body.

When the police arrived at approximately 3:00 a.m. a number of people were present. The police found a white towel, a pair of pants, a pair of shoes, beads and a pair of panties in the vicinity of the body.[2] The autopsy revealed that the victim was five and one-half months pregnant and had been raped. From the wide band of bruising on the neck, the medical examiner determined that the victim died as a result of asphyxiation, secondary to strangulation caused by the use of a mechanical instrument, such as a towel. After the police gathered the evidence from the scene of the crime, the investigating officer asked potential witnesses to come to the county jail to make statements.

1. The defendant claims the trial court erred in allowing in evidence a statement obtained without Miranda warnings. In this statement, his first, the defendant denied being inside the club that evening and denied having had a white towel with him. The defendant claims he should have received Miranda warnings because he was questioned at the jail where there were armed police and he was told not to leave. We do not agree. The defendant came to the county jail with the other potential witnesses at the request of the investigating officer. The officer stated that he felt that he could control the situation better in his office and could tape the statements. The police offered rides to those witnesses who did not have transportation to the jail. The defendant agreed to assist in the investigation and obtained a ride to the jail with one of the others present. At the jail, the witnesses sat in the front lobby or on the front steps and were called individually to the investigator's office for questioning. After being questioned, each person was told to stay close to the jail. After each session, the defendant left the investigator's office and returned to the lobby on his own where the others, including some of the defendant's relatives, were sitting.

The defendant made four statements to the police. The first statement, given without Miranda warnings and to which the defendant objects, was made before the defendant became a suspect.

---

[2] After daylight, and before the defendant was charged, his billfold was found in the same area.

The defendant was treated like all the other potential witnesses until he became a suspect, at which time Miranda warnings were given. For Miranda to apply a person must be taken into custody or otherwise deprived of his freedom of action in any significant way. *Shy v. State,* 234 Ga. 816 (1) (218 SE2d 599) (1975); Miranda v. Arizona, 384 U. S. 436, 444 (86 SC 1602, 16 LE2d 694) (1966). Miranda warnings are not required simply because questioning takes place in a building containing jail cells. *Woods v. State,* 242 Ga. 277, 280-281 (248 SE2d 612) (1978); Oregon v. Mathiason, 429 U. S. 492, 495 (97 SC 711, 50 LE2d 714) (1977).

Defendant relies on United States v. Jones, 352 FSupp. 369, 378 (S. D. Ga. 1972), for the proposition that whether a person is deprived of his freedom is determined by such person's subjective feeling and the nature of police intentions and actions in light of the surrounding circumstances. Defendant urges that he felt he was deprived of his freedom. Once he arrived at the jail, the defendant (knowing he was guilty) may have regretted going there and may have wished he could leave without thereby arousing suspicion. Nevertheless, there is no indication that the defendant had been taken into custody or otherwise deprived of his freedom of action in any significant way by action of the officers when he made his first statement to the police. The defendant's statement was admissible as a statement made prior to any in-custody interrogation. *Davis v. State,* 242 Ga. 901 (5) (252 SE2d 443) (1979).

2. The defendant claims the trial court erred in allowing into evidence his statements obtained as the result of an illegal arrest. No challenge by motion to suppress or objection was made at trial to the admission of any of defendant's statement on the grounds of an illegal arrest. An objection not raised at trial is waived. *Willis v. State,* 249 Ga. 261 (4) (290 SE2d 87) (1982). Moreover, we have determined in Division 1, above, that the defendant was not arrested at the time he contends he was.

3. The defendant claims the trial court improperly refused to charge the jury on voluntary manslaughter. "A person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and [sic] if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person. . . ." OCGA § 16-5-2(a); compare former Code § 26-1102. The defendant claims the evidence required a charge on voluntary manslaughter because the state introduced evidence showing a violent and passionate struggle. The "passion" referred to in OCGA § 16-5-2(a) (Code Ann. § 26-1102) is not sexual desire. The evidence introduced by the state shows the

victim's resistance and lack of consent to sexual intercourse. There is no evidence of any provocation so as to warrant a charge on voluntary manslaughter. *Swett v. State,* 242 Ga. 228, 230 (248 SE2d 629) (1978).

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 14, 1984.

*Payne & Hendricks, Ben F. Hendricks,* for appellant.

*John T. Strauss, District Attorney, Michael J. Bowers, Attorney General, Paula K. Smith, Staff Assistant Attorney General,* for appellee.