## A01A0532. DRIVER v. THE STATE.
### (546 SE2d 549)

MIKELL, Judge.

A jury found Earl Driver guilty of habitual violator (Count 1)[1] and driving a vehicle while his alcohol concentration was more than 0.10 grams (Count 3).[2] He was acquitted of driving under the influence to the extent it was less safe for him to drive (Count 2).[3] The defendant's three habitual violator convictions and eleven DUI convictions were introduced in aggravation during sentencing. The trial court imposed a five-year prison term for the habitual violator conviction and twelve months for the DUI conviction, to be served consecutively. On appeal, the defendant challenges the admission of his statement into evidence as well as the sufficiency of the evidence to support his DUI conviction. We affirm.

The evidence adduced at trial reveals that on October 31, 1997, Richard Harrison, then a Carroll County deputy sheriff, responded to a call concerning a single-car accident on Highway 5. Harrison found a slightly damaged blue Honda Prelude off the shoulder of the road, heading down an embankment. The car was unoccupied. When Harrison activated the blue lights on his patrol car, Mr. and Mrs. Jerry Driver, the defendant's brother and sister-in-law, came outside of their home, which was located across the street from the accident site. Harrison, who knew the Driver family, drove his vehicle onto

---

[6] *Nee v. Dixon*, 199 Ga. App. 729, 730 (405 SE2d 766) (1991).
[1] OCGA § 40-5-58 (c).
[2] OCGA § 40-6-391 (a) (5).
[3] OCGA § 40-6-391 (a) (1).

their property. The deputy spoke with Jerry Driver, who stated that he owned the car but had not been driving it.

Harrison testified that Jerry invited him into the residence. When he walked inside, he saw the defendant eating a meal. The deputy asked the defendant whether he had been driving, and the defendant replied that he had not. Harrison observed that the defendant's speech was slurred and that he smelled of alcohol. Harrison began conversing with other members of the household, and the defendant walked down the hallway. When he returned to the front of the house, the defendant told Harrison: "I'm not going to let my brother go to jail for this. . . . I was driving the car." The deputy then placed him in the back of the patrol car and read him the implied consent notice.

The defendant agreed to submit to a state-administered breath test. The results revealed that defendant had a blood alcohol concentration of 0.131 grams.

1. In his first enumeration of error, the defendant contends that the trial court erred in admitting his incriminating statement into evidence because he was not advised of his *Miranda*[4] rights. We disagree.

"A person is entitled to *Miranda* warnings only if the person has been taken into custody or deprived of freedom of action in a significant way."[5]

> [T]he issue of custody involves an objective standard: Would a reasonable person in the defendant's situation have believed that he was physically deprived of his freedom of action in any significant way? If not, he is not subject to the compulsive atmosphere of an actual arrest, and *Miranda* does not apply.[6]

Applying the objective standard to the facts of this case, we conclude that the trial court's finding that the defendant was not in custody when he made the statement was not clearly erroneous.[7] The defendant testified that after he told the deputy that he had not been driving the wrecked automobile, he was unaware of the deputy's subsequent activities, because he "was sitting at the table eating, wasn't paying no attention to none of them really." The defendant then testi-

---

[4] *Miranda v. Arizona,* 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[5] *McAllister v. State,* 270 Ga. 224, 227 (1) (507 SE2d 448) (1998).

[6] (Citations and punctuation omitted.) *Quinn v. State,* 209 Ga. App. 480, 482 (2) (433 SE2d 592) (1993).

[7] *Hendrix v. State,* 230 Ga. App. 604, 605 (1) (497 SE2d 236) (1997) (clearly erroneous standard of review applies to trial court's factfindings on the issue of whether defendant was in custody for *Miranda* purposes).

fied that he went into the back of the house for 15-20 minutes, changed clothes, reemerged, and declared to Harrison that he had in fact been driving the car. The defendant also testified that he was well acquainted with the deputy, whom he called "Big Papa."

Moreover, the evidence shows that after the defendant initially denied driving the car, the deputy asked him no further questions. Rather, he permitted the defendant to roam about freely. The evidence thus compels the conclusion that a reasonable person in the defendant's shoes would not have believed that his freedom was curtailed in any significant way when the deputy asked whether he had been driving. Accordingly, we find no error in the admission of the statement into evidence.

2. In his remaining enumerated errors, the defendant contends that the state presented insufficient evidence to support his DUI conviction. However, a review of the record reveals ample evidence from which any rational trier of fact could have determined that the defendant was guilty of driving a vehicle while his alcohol concentration was more than 0.10 grams. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Accordingly, the trial court did not err in denying the defendant's motion for new trial on the general grounds.

*Judgment affirmed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED MARCH 5, 2001.

*Thomason & Blackmon, Valerie C. Thomason*, for appellant.
*Peter J. Skandalakis, District Attorney, Anne C. Allen, Assistant District Attorney*, for appellee.